[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAR 29, 2007
THOMAS K. KAHN
CLERK

_____

No. 06-14308
Non-Argument Calendar

_____

D. C. Docket No. 06-00029-CR-CG

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBBIE ALLEN MAULDIN,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 29, 2007)

Before TJOFLAT, BLACK and HULL, Circuit Judges.

PER CURIAM:

Robbie Allen Mauldin appeals his sentence imposed after he pled guilty to possession of child pornography. He asserts the district court erred in enhancing his sentence under U.S.S.G. § 2G2.2(b)(7)(D) for an offense involving 600 or more images because the court failed to consider whether the images were intentionally downloaded or were "cached" images automatically written onto his computer while he was viewing a website. He also contends the district court committed error under *United States v. Booker*, 125 S. Ct. 738 (2005), specifically (1) violating his Fifth and Sixth Amendment rights because he was sentenced based on a finding there were 600 or more images, a factor he claims was neither admitted to by him, proven to a jury beyond a reasonable doubt, or charged in the indictment; and (2) increasing his penalty beyond the statutory maximum sentence because he claims the statutory maximum is proscribed by facts either admitted by the defendant or found by the jury. The district court did not err, and we affirm.

## I. BACKGROUND

A federal grand jury indicted Mauldin, charging him with knowingly possessing and attempting to possess images of child pornography that were mailed, shipped, and transported in interstate commerce by any means, including by computer, in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and 2256(8)(A). At a

2

change-of-plea hearing, Mauldin entered a guilty plea without a written plea agreement.

The PSI set Mauldin's base offense level at 18, pursuant to U.S.S.G. § 2G2.2(a). The PSI then enhanced Mauldin's offense level by 5 levels, pursuant to 2G2.2(b)(7)(D), on the basis the offense involved 600 or more images of child pornography. The PSI then applied several additional enhancements and reductions, resulting in a total offense level of 28. With a criminal history category of I, the Guidelines range was 78 to 97 months' imprisonment. Mauldin objected to the 5-level increase for possessing 600 or more images and to the PSI's failure to recommend a downward departure.

At the sentencing hearing, Mauldin first addressed his objection regarding the number of images. He stated that he was not disputing the Government's assertion that there were over 900 images, but that he was objecting to "the character of the evidence" because the overwhelming majority were "cached" images. Mauldin claimed there was a Ninth Circuit case on point discussing the issue of cached images. Mauldin also proffered the testimony of Barry Langley, a computer consultant, who testified he had examined the disk provided to him by the FBI. Langley testified that many of the images were "stacked," meaning there were multiple images on a single webpage. He also testified that a "cached image"

3

was an image that was automatically written onto a hard drive after a person had visited a website. Langley testified Mauldin could not have purposely downloaded every single image because he was using a 56k dial-up modem and could not have done it in the time indicated.

After Langley's testimony, the district judge asked Mauldin about the Ninth Circuit opinion discussing cached images. The following exchange occurred:

> The Court: All right. Well, what I understand this opinion to say is that the district judge found that or granted a downward departure for the case being outside the heartland of child pornography cases because these were cached images or in part because they were cached images.
>
> [Defense Counsel]: Yes, Your Honor. And that's part of my argument here.
>
> The Court: Well, I had understood that you objected to the . . . 2G2.2(B)(7)(D) finding that there were more than 600 images because some of them were cached.
>
> [Defense Counsel]: Well, and if I didn't articulate it properly, Your Honor, I apologize. What I did out of an abundance of caution was– this is a very–this was a–I'm not sure what it is. But granted, we do not dispute that the 958 images that were presented on that disk that we looked at at the FBI office were on his computer. That is not correct. And toward that end, I understand what Your Honor's saying. I guess that the problem–
>
> The Court: Well, I had understood your argument to be more or less because he didn't have the so-called intent to download them, that he thought he was just looking at them on a website, that perhaps that enhancement shouldn't apply.

4

[Defense Counsel]: Well, I think that what you can–no. I think what the Court can do in this case–because I really think that, as a matter of law, when you're dealing with cached images you're outside the heartland, because they never contemplated that.

The Court: Well, but we've got two separate issues here.

[Defense Counsel]: I hear you. You're correct, Your Honor, you're correct.

The Government then proffered the testimony of Barbara Wardriski, an information specialist forensic examiner for the FBI. She testified there were over 800 images recovered in various computer folders. The Government also proffered the testimony of Angela Tobon, a special agent for the FBI. She testified that images of child pornography were viewed on numerous occasions between May and July before "the system was wiped clean." She also identified four images of child pornography she had reviewed and described them for the court. On cross-examination, Tobon testified she was informed there were 900-plus images of child pornography on the hard drive.

After Tobon finished testifying, the district judge asked, "Now, where are we in terms of any objection to the actual calculation of the guidelines?" Mauldin replied, "I think Your Honor has properly characterized that the calculations for the number of images found on that computer are 985." The district judge then found the total offense level to be 28 with a criminal history category of I. The district

5

judge inquired if there were any objections, to which Mauldin replied, "No, Your Honor."

Mauldin then argued this case was outside the heartland of child pornography cases because (1) there was evidence that it was his computer that was downloading images onto his hard drive, and (2) unlike the majority of individuals engaged in this conduct, he never organized these images into computer files or traded them via e-mail. The district judge rejected Mauldin's argument, finding this type of case was not outside the heartland.

The district judge sentenced Mauldin to the low-end guideline sentence of 78 months' imprisonment to be followed by a life term of supervised release. After imposing sentence, the district judge inquired if there were any objections. Mauldin replied he was restating his objection that he was entitled, as a matter of law, to consideration of a downward departure. The district judge noted he had considered and rejected Mauldin's argument for a downward departure.

## II. DISCUSSION

### A. *U.S.S.G. § 2G2.2(b)(7)(D)*

Mauldin asserts the district court erred in enhancing his sentence under U.S.S.G. § 2G2.2(b)(7)(D) for an offense involving 600 or more images because the court failed to consider whether the images were intentionally downloaded or

6

were "cached" images automatically written onto his computer while he was viewing a website. "Post-*Booker*, we continue to review the district court's application of the Guidelines just as we did pre-*Booker*: The district court's interpretation of the sentencing guidelines is subject to de novo review on appeal, while its factual findings must be accepted unless clearly erroneous." *United States v. Ellis*, 419 F.3d 1189, 1192 (11th Cir. 2005) (quotation omitted). Pursuant to U.S.S.G. § 2G2.2(b)(7)(D), the district court shall increase a defendant's offense level by 5 levels if the offense involved 600 or more images.

The district court did not clearly err in imposing the enhancement. Mauldin conceded at sentencing that there were over 900 images of child pornography stored on his computer. Additionally, in the middle of his sentencing hearing, Mauldin abandoned his argument that not all images should count toward the enhancement because they were "cached" in favor of arguing for a downward departure on the basis the cached images took the case outside the heartland of child pornography cases.[1]

B. *Booker*

Mauldin contends the district court committed error under *Booker*, specifically (1) violating his Fifth and Sixth Amendment rights because he was

---

[1] Mauldin does not appeal the district court's denial of downward departure.

7

sentenced based on a finding there were 600 or more images, a factor he claims was neither admitted to by him, proven to a jury beyond a reasonable doubt, or charged in the indictment; and (2) increasing his penalty beyond the statutory maximum sentence because he claims the statutory maximum is proscribed by facts either admitted by the defendant or found by the jury.

Contrary to Mauldin's assertion, district courts are permitted under the advisory Guidelines to apply extra-verdict enhancements based solely on judicial factfinding. *See United States v. Chau*, 426 F.3d 1318, 1323-24 (11th Cir. 2005) (explaining as long as the district court employs the Guidelines in an advisory manner, the use of extra-verdict enhancements is not unconstitutional). Mauldin admitted there were over 900 images stored on his computer, and the district court heard expert testimony that over 800 images of child pornography were recovered from Mauldin's computer. Based on the admission and testimony, the district court did not err in finding by a preponderance of the evidence that more than 600 images were involved. Additionally, Mauldin's assertion the district court's sentence exceeded the statutory maximum is without merit. Under the advisory Guidelines, the statutory maximum sentence is defined solely by the U.S. Code. *See United States v. Duncan*, 400 F.3d 1297, 1303-05 (11th Cir.), *cert. denied*, 126 S. Ct. 432 (2005). Mauldin's low-end Guidelines sentence of 78 months'

imprisonment was well below the statutory maximum sentence of 120 months' imprisonment found in 18 U.S.C. § 2252A(b)(2).

## II.  CONCLUSION

The district court did not clearly err in imposing a U.S.S.G. § 2G2.2(b)(7)(D) enhancement.  Additionally, the district court did not commit any error under *Booker*.

**AFFIRMED.**